## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| WALTER HUGGINS, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>FEDERAL EXPRESS CORPORATION, et al., )<br>)<br>Defendants. ) | Case No. 4:06-CV-01283 SNL |

## MEMORANDUM

This matter is before the Court on Plaintiff's motion for reconsideration (Doc. #43, filed Oct. 9, 2007). Responsive pleadings have all been filed. This cause of action is currently set for trial on the Court's docket of Monday, May 19, 2008 in Courtroom 3.

### *BACKGROUND*

In September of 2005, Plaintiff filed a petition in the Circuit Court of the City of Saint Louis, State of Missouri. Plaintiff was involved in a motor vehicle accident in Webster County, Missouri while acting in the scope of his employment with former Defendant Bradford Holding Company, Inc. ("Bradford"). Thereafter, Plaintiff filed a worker's compensation claim with the Texas Workers' Compensation Commission against Bradford and has received to date in excess of $70, 000.00 for his work-related injuries. Subsequent to his workers' compensation claim, and relevant here, Plaintiff brought suit against each Bradford and Ireland Logistics Corporation ("Ireland") alleging negligence, based on a theory of vicarious liability. Plaintiff bases his claims on the alleged facts that Bradford and Ireland employed his co-employee ("Gutierrez"), who was operating the truck (in which Plaintiff was riding) at the time of the accident.

In their original motions to dismiss before the state court, Bradford and Ireland separately argued that each was the employer, or co-employer, of Plaintiff and that (by virtue of Plaintiff's workers' compensation recovery) further compensation for work-related injuries was barred by the Texas Labor Code. The state court granted Bradford's unopposed motion to dismiss by default, but the action was removed to this Court before Ireland's motion was addressed. Thereafter, this Court dismissed party-defendant Ireland, finding that it was a "co-employer" within the meaning of TEX. LAB. CODE § 91.001, *et al.* (2006), and Plaintiff was barred from

recovering as against Ireland in light of the exclusive recovery provision thereunder. (*See* Doc. #37, filed Sep. 14, 2007.)

Now before the Court, Plaintiff requests reconsideration of Defendant's motion to dismiss for fraudulent and pretensive joinder (Doc. #4, filed Aug. 24, 2006), and Plaintiff's motion for remand (Doc. #7, filed Sep. 13, 2006). Upon reconsideration of these motions, the Court **HEREBY ADOPTS**, **RE-INCORPORATES**, and **SUSTAINS** its previous Order (Doc. #37). The analysis found herewith.

### *Legal Standard*

Although termed as a motion to dismiss, in assessing fraudulent and pretensive joinder, this Court has adopted the framework set forth in *Parnas v. General Motors Corp.*, 879 F.Supp. 91, 92-93 (D.Mo. 1995), and will considers matters outside the pleadings "but only to decide whether plaintiffs have a colorable ground supporting their claims and not for the purpose of deciding whether [the non-diverse defendants] would be entitled to summary judgment; the standards are different for the two inquiries.' " *Reeb v. Wal-Mart Stores, Inc.*, 902 F.Supp. 185, 188 (D.Mo. 1995) (quoting *Parnas*, 879 F.Supp. at 93). *See also Schwenn, et al. v. Sears, Roebuck, and Co., et al.*, 822 F.Supp. 1453, 1456 (D.Minn. 1993) ("even where a court pierces the pleadings and considers factual and legal matters outside the complaint, it should . . . only consider whether there are any facts supporting the claims.") (citing *Banbury v. Omnitrition Intern., Inc.*, 818 F.Supp. 276, 280 (D.Minn. 1993)); *Anderson v. Home Ins. Co.*, 724 F.2d 82, 84 (8th Cir. 1983) (resident defendant properly dismissed where plaintiff stated no claim against defendant, and defendant was not a party to the subject contract or otherwise involved in plaintiff's claims).

Joinder will be fraudulent, and the Court will retain jurisdiction over the present matter, if on the face of Plaintiff's state court petition no cause of action lies against the resident defendant (Ireland). *Reeb*, 902 F.Supp. at 187. The burden of proof rests with the removing party. *See Filla v. Norfolk Southern Ry. Co.*, 336 F.3d 806, 809, 811 (8th Cir. 2003).

In light of the foregoing, the Court turns to the record to determine whether Plaintiff's petition states a basis for recovery against Ireland.

> [A] proper review should give paramount consideration to the reasonableness of the basis underlying the state claim. Where applicable state precedent precludes the existence of a cause of action against a defendant, joinder is fraudulent. "[I]t is well established that if it is *clear* under

governing state law that the complaint does not state a cause of action against the non-diverse defendant, the joinder is fraudulent and federal jurisdiction of the case should be retained." However, if there is a "colorable" cause of action-that is, if the state law *might* impose liability on the resident defendant under the facts alleged-then there is no fraudulent joinder. *See Filla*, 336 F.3d at 810 (quoting *Iowa Public Service Co. v. Medicine Bow Coal Co.*, 556 F.2d 400, 406 n. 6 (8th Cir. 1977); *and* citing *Foslip Pharmaceuticals, Inc. v. Metabolife Intern., Inc.*, 92 F.Supp.2d 891, 903 (D. Iowa 2000)).

## *ANALYSIS*

In order to retain jurisdiction over the present matter, the Court must find *no reasonable basis* for Plaintiff's state law claim against Ireland. The Court first addresses the applicability of the exclusive remedy provision of Texas' Workers' Compensation Statute. Next, the Court assesses the viability of Plaintiff's common law claim alleging vicarious liability.

Before turning to the ultimate issues, the Court pauses to address Plaintiff's reliance on Defendants' prior "judicial admissions" regarding Ireland's employer status.

### *Judicial Admissions*

Statements contained in the parties' pleadings typically arise from the deliberate, voluntary concessions of facts, and constitute judicial admissions. Unlike ordinary admissions which may be rebutted by other evidence, judicial admissions are conclusive on the admitting party, and serve the trial process by dispensing with the production of evidence as to admitted facts. *See In re Crawford,* 274 B.R. 798, 804-05 (B.A.P. 8th Cir. 2002).

In balancing considerations of fairness with the policy of encouraging judicial admissions, trial courts have broad discretion to relieve parties from the consequences of judicial admissions. *Livingston v. Bartis*, No. 4:06-CV-1574, 2008 WL 185791, at *6 n. 9 (D.Mo. Jan. 18, 2008) (citing *Electric Mobility Corp. v. Bourns Sensors/Controls, Inc.*, 87 F.Supp.2d 394, 406 (D.N.J. 2000)); *U.S. v. Belculfine*, 527 F.2d 941, 944 (1st Cir. 1975); *Meyer v. Berkshire Life Ins. Co.*, 372 F.3d 261, 264 (4th Cir. 2004).

Here, the Court notes the following admissions by Defendant Teton:

At the time of the accident, plaintiff was acting within the course and scope of his agency/employment with former defendant [Bradford] and defendant [Ireland]. (Doc. #4 att. 1: 1-2, filed Aug. 24, 2006.)
At the time of his injury, defendants Bradford and Ireland were governed by a Leasing Agreement for professional employer services. Under the Agreement, Ireland and Bradford were considered "co-employers" and §408.001 of the Texas Labor code is applicable to both Ireland and Bradford. (*Id*. at 2.)

3

On or about November 17, 2002, defendant Ireland entered into a Leasing Agreement with defendant Bradford for professional employer services. *Exhibit E, Agreement.* Under the Agreement, Bradford was responsible for procuring workers' compensation insurance and administering, managing and processing claims. *Exhibit E, Section 3, Regulatory Compliance, Part A(2).* Also under the Agreement, as provided by §91.042 of the Texas Labor Code, for workers' compensation insurance purposes, Ireland and Bradford "shall be co-employers and the provisions of Sections 406.034 (employee election) and 408.001 (exclusive remedy, noted above) of the Texas Labor code shall be applicable to both [Ireland] and [Bradford]." *Exhibit E, Section 10, Workers' Compensation, Part C; Exhibit F, defendant Bradford's Answers to plaintiff's Interrogatories.* (*Id.* at 6) (emphasis in original.)

Accordingly, defendants Bradford and Ireland are considered "co-employers" and plaintiff's action against both defendants was barred by the Texas Labor Code. (*Id.* at 7.)

The "Agreement" to which Teton referred in its "admissions," and attached to Teton's memorandum, solely identifies Bradford and ANI as the contracting parties. Also, attached to Teton's memorandum was Bradford's answers to Plaintiff's interrogatories, setting forth that the Agreement was entered into by Bradford and ANI, under which both were employers, and the only relationship maintained between *Ireland* and Bradford was this ANI-Bradford Agreement. This evidence is consistent with Teton's assertions in its *motion* to dismiss, which states:

On or about November 17, 2002, Bradford and ANI Logistics (also known as Ireland Logistics) entered into a Leasing Agreement for professional services. *Exhibit E, Agreement.* (Doc. #4 at ¶19) (emphasis in original.)

Also under the Agreement . . . ANI/Ireland and Bradford "shall be co-employers and the provisions of [Texas Labor Code] shall be applicable to both [Ireland] and [Bradford]." *Exhibit E, Section 10, Workers' Compensation, Part C; Exhibit F, defendant Bradford's Answers to plaintiff's interrogatories.* (*Id.* at ¶21) (emphasis in original.)

Accordingly, Bradford and Ireland are considered "co-employers" and plaintiff's action against Ireland is barred by the Texas Labor Code. (*Id.* at ¶24.)

Further noticed by the Court, Ireland made the following admissions in its motion to dismiss in state court:

Plaintiff was at all times relevant hereto an employee of Defendant Ireland Logistics Corporation. (Doc. #14 ex. A at ¶ 2, filed Oct. 4, 2006.)

Ireland Logistics continued as the day to day supervisor of Plaintiff, Ireland Logistics established its own worksite policies and procedures, and continued to make all decisions regarding plaintiff's pay rate, job responsibilities, performance evaluations, and discipline. (*Id.* at ¶6.)

Defendant Ireland Logistics, at all times relevant hereto, controlled the employer/ employee relationship of Plaintiff. (*Id.* at ¶7.)

In response to Plaintiff's argument, Ireland defends on the basis that the subject statements were made by Defendants' counsel upon mistaken belief. Moreover, Ireland alleges that its attorneys were unaware that Plaintiff was "actually employed" by Jon Ireland, *doing business as*

4

ANI. These allegations are supported by the record. In support of its position, Ireland produces (i) the sworn testimony of Mr. Ireland stating that he, *doing business as* ANI, entered into the Agreement with Bradford, and that he owned all the equipment involved in the accident; and (ii) Plaintiff's injury report and New Hire Information Sheet filed with Bradford, both identifying ANI as the employer.

While an attorney employed to manage a party's conduct of a lawsuit, and who has authority to make relevant judicial admissions, will generally bind that party to the same; the Court finds the subject admissions to be equivocal[FN1] and/or legal conclusions.[FN2]

Applying the above standard to the instant case, the Court finds that Defendants' assertions regarding Ireland's employer status were never formally pled, were largely contradicted by the attached exhibits, were wholly disputed by the sworn testimony of parties with personal knowledge, and consisted almost entirely of legal conclusions. Accordingly, the

---

**FN1**. Statements contained in memoranda, as opposed to pleadings, FED. R. CIV. P. 7(a), generally do not give rise to judicial admission. *Northern Ins. Co. of N.Y. v. Baltimore Bus. Commc'n.*, 68 F.App'x. 414, 421 (4th Cir. 2003). *See also Hub Floral Corp. v. Royal Brass Corp.*, 454 F.2d 1226, 1228-29 (2d Cir. 1972) (counsel's inadvertent statement did not rise to level of judicial admission and was corrected by affidavit made with personal knowledge of the facts). However, where there are indications of formality and reliability, courts may, in their discretion, bind the parties' to their respective admissions. *See*, *e.g.*, *City Nat'l Bank v. United States*, 907 F.2d 536, 544 (5th Cir. 1990); *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994); *Keller v. United States*, 58 F.3d 1194, 1199 n. 8 (7th Cir. 1995)); *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226-27 (9th Cir. 1988); *Plastic Container Corp. v. Continental Plastics of Oklahoma, Inc.*, 906 (10th Cir. 1979), *cert. denied,* 444 U.S. 1018 (1980) (citing *Cole v. Ross Coal Co.*, 150 F.Supp. 808, 809 (D.W.Va. 1957)).

**FN2**. *See New Amsterdam Casualty Company v. Waller*, 323 F.2d 20, 24 (4th Cir. 1963) ("The doctrine of judicial admissions has never been applied to counsel's statement of his conception of the legal theory of the case. When counsel speaks of legal principles, as he conceives them and which he thinks applicable, he makes no judicial admission and he sets up no estoppel which would prevent the court from applying to the facts disclosed by the proof the proper legal principles as the Court understands them."). *E.g.*, *Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC*, 477 F.3d 383, 394 (6th Cir. 2007); *Guidry v. Sheet Metal Workers Int'l Ass'n, Local No. 9*, 10 F.3d 700, 716 (10th Cir. 1993).

Court will not facilitate a game of "gotcha" by binding Ireland to the disputed statements.[FN3]  *See Waller*, 323 F.2d at 24 ("[A] court, unquestionably, has the right to relieve a party of his judicial admission if it appears that the admitted fact is clearly untrue and that the party was laboring under a mistake when he made the admission.").[FN4]

### I.  Ireland's Affirmative Defense

Under Texas law, "[r]ecovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage ... against the employer ... for ... a work-related injury sustained by the employee." TEX. LAB. CODE §408.001 (2006).  In order to gain protection from this exclusive remedy provision, a subject employer must meet the Labor Code's definition of "employer" (or "co-employer"), and it must provide worker's compensation insurance.

At this point, the parties' relationship requires a bit of elucidation.  According to the Agreement, ANI entered into a staffing-leasing arrangement with Bradford, whereby ANI was Bradford's "client," and it would "lease" Bradford's employees.  The Agreement provided that the leased employees would be covered by Bradford's workers' compensation insurance.  Texas law contemplates this type of "staff leasing services agreement" and sets forth that one

> **FN3**.  *See U.S., ex rel. Miller v. Bill Harbert Intern. Const., Inc*., No. 95-1231, 2007 WL 851871, at *1 (D.D.C. Mar. 14, 2007) ("Courts use judicial admissions to keep parties honest and keep proceedings efficient where a party has waived the need to prove a fact," and not "to facilitate games of 'gotcha' in which parties seek to bind each other to prior arguments.").
>
> **FN4**.  Furthermore, Plaintiff's decision to name Bradford and Ireland, and his failure to name ANI, as Gutierrez's employers, gave Ireland reasonable basis to treat ANI and Ireland as one entity.  Moreover, Plaintiff disclosed that he and Gutierrez were co-employees and that both were employed by Bradford. The Court finds it significant that Plaintiff chose to bring suit solely against Bradford and Ireland, as Gutierrez's employers, yet still maintains that he was leased to/employed by *both* ANI and Ireland.  The only explanation in this regard is Plaintiff's concession that his recovery against ANI was precluded; however, this argument is grossly undermined by his decision to bring suit against Bradford (who was presumably in the better position to assert the workers' compensation defense).  *See* Doc. #14 at ¶6 ("Having recognized from the foregoing evidence that only Jon Ireland d/b/a ANI Logistics (who is not a party to this lawsuit), rather than [Ireland], may be immune from suit as the co-employer of Plaintiff and [Driver 1] under the [Client Agreement]...").

workers' compensation policy procured by the staff leasing company will cover employees leased to a client, and that both the leasing company and the client may thereby rely on the exclusive

remedy provision of the Workers' Compensation Statute. *W. Steel Co., Inc., v. Altenburg*, 169 S.W.3d 347, 349 (Tex. App. 2005) (citing TEX. LAB. CODE §91.006(a)).

Plaintiff claims that he states a colorable action against Ireland, in that Ireland (i) was his "employer," (ii) was not a party to the Client Agreement, and (iii) did not otherwise have workers' compensation insurance. Therefore, Plaintiff urges, Ireland is not shielded by Section 408.001's exclusive remedy provision, and is liable for Gutierrez's negligence. In response, Ireland states that ANI and Bradford were the only possible employers of Plaintiff and Gutierrez during the relevant period. In order to prevail, Ireland must establish that the record would not permit a colorable claim that (i) Ireland was Plaintiff's employer; or (ii) Ireland did not have worker's compensation coverage.

*Employer*

In support of the instant motion, Ireland states that, during the relevant period, ANI and Bradford were the only possible employers of Plaintiff and Gutierrez.

Under Texas workers' compensation law, an "employer" is a person who makes a contract of hire, employs one or more employees, and has workers' compensation insurance coverage. TEX. LAB. CODE § 401.011(18).

Despite Defendants' prior statements regarding Ireland's employer status (*supra*), there is insufficient evidence in the record to support a claim that Plaintiff or Gutierrez was employed by Ireland. Notably, the parties' Agreement illustrates that the contracting parties were ANI and Bradford, and effectively defined their respective rights and duties thereunder. Further, Plaintiff's new hire information sheet and injury report identify ANI as Plaintiff's employer. Additionally, Bradford disclosed that any business relationship it maintained with Ireland consisted of a staff leasing services contract with ANI, under which Bradford and ANI were co-employers of Plaintiff and Gutierrez. Furthermore, Ireland did not, as Plaintiff accurately insists, have workers' compensation insurance, and any direction or control over Plaintiff and Gutierrez was governed by the Agreement,[FN5] to which Ireland was not a party.

Aside from Defendants' previous statements regarding Ireland's employer status, the only evidence presented in support of Plaintiff's claim against Ireland is a "Weekly Trip Sheet" which names him as the employee, and identifies "Ireland Logistics Corp." on the letterhead. The Court simply cannot base a colorable cause of action on this sole piece of evidence, greatly undermined

7

by the remainder of the record. *See Filla*, 336 F.3d at 811 ("[T]he district court's task is limited to determining whether there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved.").

The Court finds that the record wholly refutes any potential claim that Ireland was Plaintiff's employer during the relevant period. Accordingly, Plaintiff has failed to state a colorable claim against Ireland.

### *Workers' Compensation Coverage*

Even assuming, *arguendo*, that Ireland was found to be Plaintiff's "employer," such a finding would move the Court to find that Ireland had workers' compensation insurance. Afterall, there is no evidence suggesting that Plaintiff and/or Gutierrez was employed by more than two entities. The parties' stipulate that Bradford was the "leasing company," therefore, the "client" would necessarily be Ireland or ANI. While the Agreement is *unambiguous*, the totality of the circumstances indicates that the parties' intended to create an arrangement whereby the leasing company would lease employees to the client, certain rights and duties would be defined thereunder, the leasing company would be responsible to provide workers' compensation coverage, and such coverage would trigger the exclusive remedy provisions of the Workers' Compensation Statute. *Williams Consolidated I, Ltd./BSI Holdings, Inc. v. TIG Ins. Co.*, 230 S.W.3d 895, 901-02 (Tex. App. 2007).

> **FN5**. Under Texas' workers' compensation law, the contract governing the parties' relationship must set forth that the license holder (here, Bradford): (1) shares with the client the right of direction and control over employees assigned to a client's worksites; (2) assumes responsibility for payment of wages, and payment and collection of taxes, to the employees; (3) shares with the client the right to hire, fire, discipline, and reassign the assigned employees; and (4) shares with the client the right of direction and control over employment-related procedures. The client then retains responsibility for (1) the direction and control of employees necessary to conduct its business; (2) goods and services produced by the client company; and (3) the acts, errors, and omissions of employees committed within the scope of the client's business. TEX. LAB. CODE § 91.032(a)-(b).

In considering the nature of, and circumstances surrounding, the contract, the only conclusion which would effectuate the parties' intent and the policy behind the Workers' Compensation Statute would involve a finding that whichever entity leased, and had the right to

8

exercise control over, Plaintiff was the "client" for which workers' compensation coverage was provided.[FN6]

> [T]he Staff Leasing Services Act and section 406.123 (covering general contractors and subcontractors), like other workers' compensation provisions in the Code, encourage employers to obtain workers' compensation insurance coverage by providing benefits to the employer, including the exclusive remedy provision, if coverage is obtained[,] . . . and provides disincentives, such as removing common law defenses, if coverage is not obtained. *Wingfoot Enterprises v. Alvarado*, 111 S.W.3d 134, 142 (Tex. 2003).

In the staff-leasing framework, an employee (like Plaintiff) will be working for his general employer, and also subject to laboring in the workplace under the direction of the client. *Wingfoot*, 111 S.W.3d at 142-43. Here, Bradford and a "client" company entered into a staff leasing contract; and Plaintiff, as the employee of both, was entitled to collect workers' compensation from either employer. *Id*. at 143. Therefore, *both* employers must be protected from further work-related injury claims.

> The act relieves employees of the burden of proving their employer's negligence, and instead provides timely compensation for injuries sustained on-the-job . . .. In exchange for this prompt recovery, the act prohibits an employee from seeking common-law remedies from his employer, as well as his employer's agents, servants, and employees, for personal injuries sustained in the course and scope of his employment. *Id*. at 142 (quoting *Hughes Wood Products, Inc. v. Wagner*, 18 S.W.3d 202, 206-07 (Tex. 2000)).

Accordingly, if the Court were to find that Ireland was Plaintiff's "employer," the record will not support a colorable claim that Ireland did not have workers' compensation insurance.

---

**FN6**. *See City of Midland v. Waller*, 430 S.W.2d 473, 478 (Tex. 1968) (The court should examine the entire agreement in an effort to harmonize, and give effect to, all provisions of the contract so that no provision will be rendered meaningless.).

9

## II. Plaintiff's Claim for Vicarious Liability

Again assuming, *arguendo*, that Ireland's affirmative defense under the Workers' Compensation Statute is unsuccessful, Plaintiff has still failed to state a claim under Texas common law.

Under the doctrine of *respondent superior*, an employer may be held vicariously liable for the negligence of its employees. *Maes v. El Paso Orthopaedic Surgery Group*, No. 28-06-00071-CV, 2007 WL 2456893, at *4 (Tex. App. 2007) (citing *Baptist Memorial Hosp. Sys. v. Sampson,* 969 S.W.2d 945, 947 (Tex. 1998)). As a threshold matter, a plaintiff must establish that "an agency relationship existed between the employee and the employer." *Zarzana v. Ashley*, 218 S.W.3d 152, 159 (Tex. App. 2007).

Under Texas common law, employer status[FN7] is determined under the "right of control" test. *Wingfoot*, 111 S.W.3d at 145 (citing *Del Industrial, Inc.*, 35 S.W.3d 591, 595 (Tex. 2000)). Under this test, courts look at the employer's "right to control the progress, details, and methods of operations of the employee's work." *Thompson v. Travelers Indem. Co. of Rhode Island*, 789 S.W.2d 277, 278 (Tex. 1990) (citing *Newspapers, Inc. v. Love*, 380 S.W.2d 582, 585-90 (Tex. 1964)). As stated above, no allegations have been made, and the record simply does not permit a finding, that Ireland had any *right* to control Driver 1's work.

Accordingly, Plaintiff has not stated a colorable claim under Texas common law.

**NOW THEREFORE**,

Upon reconsideration of Defendant's motion to dismiss (Doc. #4), the Court **HEREBY ADOPTS**, **RE-INCORPORATES**, and **SUSTAINS** its previous Order (Doc. #37, filed Sept. 14, 2007).

**SO ORDERED**.

**D**ated this 14th day of February, 2008.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**

[FN7]. Although Plaintiff's petition alleges the existence of an "agency/employment" relationship, the record does not support this allegation.